**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT BRANDER, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KYNDRYL HOLDINGS, INC., MARTIN J. SCHROETER, DAVID B. WYSHNER, and VINEET KHURANA,<br><br>Defendants. | **Case No:**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Robert Brander ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding Kyndryl Holdings, Inc. ("Kyndryl" or the "Company"), and

information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Kyndryl securities between August 7, 2024 and February 9, 2026, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendant's violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act")

### JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff Robert Brander, as set forth in the accompanying certification, incorporated by reference herein, purchased Kyndryl securities during the Class Period and was economically damaged thereby.

7.     Defendant Kyndryl describes itself as a "technology services company, which engages in the provision of infrastructure services."

8.     Kyndryl incorporated in Delaware and its head office is located at One Vanderbilt Avenue, 15th Floor, New York, N.Y, 10017. Kyndryl's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "KD."

9.     Defendant Martin J. Schroeter ("Schroeter") has served as the Company's Chief Executive Officer ("CEO") since January 2021. He is the Company's Chairman of the Board.

10.     Defendant David B. Wyshner ("Wyshner") served as the Company's Chief Financial Officer ("CFO") from September 2021 to February 2026. As stated below, upon information and belief, Defendant Wyshner was terminated from his position as a result of the misconduct outlined in this complaint.

11.     Defendant Vineet Khurana ("Khurana") has served as the Company's Senior Vice President, Global Controller, and Principal Accounting Officer from May 2021 to February 2026. Upon information and belief, Defendant Khurana was removed from this position as a result of the misconduct outlined in this complaint. He currently works for the Company in an unspecified capacity.

12.     Defendants Schroeter, Wyshner, and Khurana are collectively referred to herein as the "Individual Defendants."

13.     Each of the Individual Defendants:

(a)    directly participated in the management of the Company;

(b)    was directly involved in the day-to-day operations of the Company at the highest levels;

(c)    was privy to confidential proprietary information concerning the Company and its business and operations;

(d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)    approved or ratified these statements in violation of the federal securities laws.

14.    Kyndryl is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

16.    Kyndryl and the Individual Defendants are collectively referred to herein as "Defendants."

4

## SUBSTANTIVE ALLEGATIONS
### Materially False and Misleading Statements
### Issued During the Class Period

17.     On August 7, 2024, Kyndryl filed with the SEC its quarterly report on Form 10-Q for the period ended June 30, 2024 (the "1Q25 Report"). Attached to the 1Q25 Report were certifications pursuant to The Sarbanes Oxley Act of 2002 ("SOX") signed by Defendants Schroeter and Wyshner attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

18.     Defendant Khurana was the authorized signatory of the 1Q25 Report pursuant to the requirements of the Securities Exchange Act of 1934 (the "Exchange Act").

19.     The 1Q25 Report contained the following statement regarding the Company's evaluation of its disclosure controls and procedures:

> The Company's management evaluated, with the participation of the Chief Executive Officer and Chief Financial Officer, the effectiveness of the Company's disclosure controls and procedures (as such term is defined in Rule 13a-15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")) as of the end of the period covered by this report. Based on that evaluation, the Chief Executive Officer and Chief Financial Officer have concluded that ***the Company's disclosure controls and procedures were not effective as of the end of the period covered by this report due to a material weakness in internal control over financial reporting in the area of our information technology general controls ("ITGCs") that was disclosed in Part II, Item 9A of the Company's Form 10-K.*** The deficiencies in ITGCs were related to access and program development and change management controls associated with the Company's large-scale migration in a compressed timeframe of its internal operating systems to a new enterprise resource planning system, which was required to replace the systems temporarily being made available to the Company by our former Parent following our Spin-off. These control deficiencies did not result in a misstatement to the annual or interim consolidated financial statements previously filed or included in this Form 10-Q.
>
> ***There have been no changes in the Company's internal control over financial reporting (as such term is defined in Rule 13a-15(f) of the Exchange Act) that occurred during the period covered by this report that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting other than the ongoing remediation of the ITGC deficiencies described below.***

(Emphasis added).

20.     This statement was materially false and misleading at the time it was made because the Company downplayed its issues with internal control over financial reporting by only stating the deficiencies in ITGCs.

21.     The 1Q25 Report included, in pertinent part, the following consolidated statement of cash flows:



22.     Upon information and belief, based on a later disclosure by the Company, the consolidated statement of cash flows in the 1Q25 Report were materially misstated.

23.     On November 7, 2024, Kyndryl filed with the SEC its quarterly report on Form 10-Q for the period ended September 30, 2024 (the "2Q25 Report"). Attached to the 2Q25 Report were certifications pursuant to SOX signed by Defendants Schroeter and Wyshner attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

24.     Defendant Khurana was the authorized signatory of the 2Q25 Report pursuant to the requirements of the Exchange Act.

25.    The 2Q25 Report contained the following statement regarding the Company's evaluation of its disclosure controls and procedures:

> The Company's management evaluated, with the participation of the Chief Executive Officer and Chief Financial Officer, the effectiveness of the Company's disclosure controls and procedures (as such term is defined in Rule 13a-15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")) as of the end of the period covered by this report. Based on that evaluation, the Chief Executive Officer and Chief Financial Officer have concluded that ***the Company's disclosure controls and procedures were not effective as of the end of the period covered by this report due to a material weakness in internal control over financial reporting in the area of our information technology general controls ("ITGCs") that was disclosed in Part II, Item 9A of the Company's Form 10-K.*** The deficiencies in ITGCs were related to access and program development and change management controls associated with the Company's large-scale migration in a compressed timeframe of its internal operating systems to a new enterprise resource planning system, which was required to replace the systems temporarily being made available to the Company by our former Parent following our Spin-off. These control deficiencies did not result in a misstatement to the annual or interim consolidated financial statements previously filed or included in this Form 10-Q.
>
> ***There have been no changes in the Company's internal control over financial reporting (as such term is defined in Rule 13a-15(f) of the Exchange Act) that occurred during the quarter ended September 30, 2024 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting other than the ongoing remediation of the ITGC deficiencies described below.***

(Emphasis added).

26.    This statement was materially false and misleading at the time it was made because the Company downplayed its issues with internal control over financial reporting by only stating the deficiencies in ITGCs.

27.    The 2Q25 Report included, in pertinent part, the following consolidated statement of cash flows:



28.    Upon information and belief, the consolidated statement of cash flows in the 2Q25 Report were materially misstated.

29.    On February 6, 2025, Kyndryl filed with the SEC its quarterly report on Form 10-Q for the period ended December 31, 2024 (the "3Q25 Report"). Attached to the 3Q25 Report were certifications pursuant to SOX signed by Defendants Schroeter and Wyshner attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

30.    Defendant Khurana was the authorized signatory of the 3Q25 Report pursuant to the requirements of the Exchange Act.

31.    The 3Q25 Report contained the following statement regarding the Company's evaluation of its disclosure controls and procedures:

The Company's management evaluated, with the participation of the Chief Executive Officer and Chief Financial Officer, the effectiveness of the Company's disclosure controls and procedures (as such term is defined in Rule 13a-15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")) as of the end of the period covered by this report. Based on that evaluation, the Chief Executive Officer and Chief Financial Officer

have concluded that ***the Company's disclosure controls and procedures were not effective as of the end of the period covered by this report due to a material weakness in internal control over financial reporting in the area of our information technology general controls ("ITGCs") that was disclosed in Part II, Item 9A of the Company's Form 10-K.*** The deficiencies in ITGCs were related to access and program development and change management controls associated with the Company's large-scale migration in a compressed timeframe of its internal operating systems to a new enterprise resource planning system, which was required to replace the systems temporarily being made available to the Company by our former Parent following our Spin-off. These control deficiencies did not result in a misstatement to the annual or interim consolidated financial statements previously filed or included in this Form 10-Q.

***There have been no changes in the Company's internal control over financial reporting (as such term is defined in Rule 13a-15(f) of the Exchange Act) that occurred during the quarter ended December 31, 2024 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting other than the ongoing remediation of the ITGC deficiencies described below.***

(Emphasis added).

32.    This statement was materially false and misleading at the time it was made because the Company downplayed its issues with internal control over financial reporting by only stating the deficiencies in ITGCs.

33.    The 3Q25 Report included, in pertinent part, the following consolidated statement of cash flows:



34.     Upon information and belief, the consolidated statement of cash flows in the 3Q25 Report were materially misstated..

35.     On May 30, 2025, Kyndryl filed with the SEC its 2025 full year report on Form 10-K for the year ended March 31, 2025 (the "2025 Annual Report"). Attached to the 2025 Annual Report were certifications pursuant to SOX signed by Defendants Schroeter and Wyshner attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

36.     The 2025 Annual Report contained the following statement regarding the Company's evaluation of its disclosure controls and procedures:

> The Company's management evaluated, with the participation of the Chief Executive Officer and Chief Financial Officer, the effectiveness of the Company's disclosure controls and procedures (as such term is defined in Rule 13a-15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")) as of March 31, 2025, the end of the period covered by this report. Based on that evaluation, the Chief Executive Officer and Chief Financial Officer **have concluded that the Company's disclosure controls and procedures were effective as of the end of the period covered by this report.**
>
> *                *                *
>
> Management, with the participation of our Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of our internal control over financial reporting as of March 31, 2025. In making this assessment, management used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission (COSO) in Internal Control - Integrated Framework (2013). **Based on this evaluation, management concluded that, as of March 31, 2025, our internal control over financial reporting was effective.**
>
> *                *                *
>
> **There have been no changes in the Company's internal control over financial reporting (as such term is defined in Rule 13a-15(f) of the Exchange Act) that occurred during the quarter ended March 31, 2025 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting other than the remediation of our information technology general controls as part of our previously disclosed remediation activities.**

(Emphasis added).

37.    This statement was materially false and misleading at the time it was made because the Company stated the 2025 Annual Report's disclosure controls and procedures were effective and were unlikely to affect the Company's internal control over financial reporting, when in reality there was material weaknesses in the Company's internal control over financial reporting with respect to controls related to information and communication and tone at the top.

38.    The 2025 Annual Report included, in pertinent part, the following consolidated statement of cash flows:



39.    Upon information and belief, the consolidated statement of cash flows in the 2025 Annual Report were materially misstated.

40.    On August 5, 2025, Kyndryl filed with the SEC its quarterly report on Form 10-Q for the period ended June 30, 2025 (the "1Q26 Report"). Attached to the 1Q26 Report were certifications pursuant to SOX signed by Defendants Schroeter and Wyshner attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

41.    Defendant Khurana was the authorized signatory of the 1Q26 Report pursuant to the requirements of the Exchange Act.

42.    The 1Q26 Report contained the following statement regarding the Company's evaluation of its disclosure controls and procedures:

> The Company's management evaluated, with the participation of the Chief Executive Officer and Chief Financial Officer, the effectiveness of the Company's disclosure controls and procedures (as such term is defined in Rule 13a-15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")) as of the end of the period covered by this report. ***Based on that evaluation, the Chief Executive Officer and Chief Financial Officer have concluded that the Company's disclosure controls and procedures were effective as of the end of the period covered by this report.***
>
> ***There have been no changes in the Company's internal control over financial reporting (as such term is defined in Rule 13a-15(f) of the Exchange Act) that occurred during the period covered by this report that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.***

(Emphasis added).

43.    This statement was materially false and misleading at the time it was made because the Company stated the 2Q21 Report's disclosure controls and procedures were effective and were unlikely to affect the Company's internal control over financial reporting, when in reality there was material weaknesses in the Company's internal control over financial reporting with respect to controls related to information and communication and tone at the top.

44.    The 1Q26 Report included, in pertinent part, the following consolidated statement of cash flows:



45.    Upon information and belief, the consolidated statement of cash flows in the 1Q26 Report were materially misstated.

46.    On November 5, 2025, Kyndryl filed with the SEC its quarterly report on Form 10-Q for the period ended September 30, 2025 (the "2Q26 Report"). Attached to the 2Q26 Report were certifications pursuant to SOX signed by Defendants Schroeter and Wyshner attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

47.    Defendant Khurana was the authorized signatory of the 2Q26 Report pursuant to the requirements of the Exchange Act.

48.    The 2Q26 Report contained the following statement regarding the Company's evaluation of its disclosure controls and procedures:

The Company's management evaluated, with the participation of the Chief Executive Officer and Chief Financial Officer, the effectiveness of the Company's disclosure controls and procedures (as such term is defined in Rule 13a-15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")) as of the end of the period covered by this report. ***Based on that evaluation, the Chief Executive Officer and Chief Financial Officer have concluded that the Company's disclosure controls and procedures were effective as of the end of the period covered by this report.***

***There have been no changes in the Company's internal control over financial reporting***

*(as such term is defined in Rule 13a-15(f) of the Exchange Act) that occurred during the period covered by this report that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.*

(Emphasis added).

49.    This statement was materially false and misleading at the time it was made because the Company stated the 2Q26 Report's disclosure controls and procedures were effective and were unlikely to affect the Company's internal control over financial reporting, when in reality there was material weaknesses in the Company's internal control over financial reporting with respect to controls related to information and communication and tone at the top.

50.    The 2Q26 Report included, in pertinent part, the following consolidated statement of cash flows:



51.    Upon information and belief, the consolidated statement of cash flows in the 2Q26 Report were materially misstated.

52.    The statements contained in ¶¶ 17-19, 21-25, 27-31, 33-36, 38-42, 44-48, and 50-51 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Kyndryl's financial statements

issued during the Class Period were materially misstated; (2) Kyndryl lacked adequate internal controls and at times materially understated issues with its internal controls; (3) as a result, Kyndryl would be unable to timely file its Quarterly Report on Form 10-Q for the quarter ended December 31, 2025; and (4) as a result, Defendants' statements about Kyndryl's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all times.

## **THE TRUTH BEGINS TO EMERGE**

53.     On February 9, 2026, before the market opened, Kyndryl filed with the SEC a Notification of Late Filing on Form 12b-5 announcing it would be unable to file its Quarterly Report on Form 10-Q for the quarter ended December 31, 2025 within the necessary time. The late filing notice also revealed the existence of an investigation by the SEC into the Company's financial reporting.

54.     The Notification of Late Filing stated the following:

The Company, through the Audit Committee of its Board of Directors, ***is reviewing its cash management practices, related disclosures (including regarding the drivers of the Company's adjusted free cash flow metric),*** the efficacy of the Company's internal control over financial reporting, and certain other matters following the Company's receipt of voluntary document requests from the Division of Enforcement of the Securities and Exchange Commission ("SEC") relating to such matters. Due to this review, the finalization of the Quarterly Report, including the Company's assessment of internal control over financial reporting, requires additional time to complete.

*                    *                    *

In connection with the filing of the Quarterly Report, when made, ***the Company anticipates reporting material weaknesses in the Company's internal control over financial reporting for the period covered in the Quarterly Report, as well as for the full fiscal year ended March 31, 2025, and the first two fiscal quarters of fiscal year 2026, which are expected to include, but may not be limited to, the effectiveness and strength of certain functions at the Company, including with respect to controls related to information and communication and tone at the top. As a result, the Company notes that its assessment of internal control over financial reporting and the related opinion of PricewaterhouseCoopers LLP only with respect to the effectiveness of the Company's internal control over financial reporting as of March 31, 2025 included in the***

***Company's Annual Report on Form 10-K for the full fiscal year ended March 31, 2025 should no longer be relied upon.***

(Emphasis added).

55.    Later that day, before the market opened, Kyndryl filed with the SEC a Current Report on Form 8-K. Attached to the 8-K was a press release which stated the following:

> Kyndryl today announced that Harsh Chugh has been named Interim Chief Financial Officer, Mark Ringes has been named Interim General Counsel and Bhavna Doegar has been named Interim Corporate Controller effective immediately.

56.    A separate 8-K stated that "[. . .] David Wyshner departed from his position as Chief Financial Officer of the Company, and Edward Sebold departed from his position as General Counsel of the Company, effective immediately. In addition, on the same date, Vineet Khurana stepped down from his position as Senior Vice President and Global Controller of the Company and assumed a different role at the Company."

57.    As a result, upon information and belief, Defendants Wyshner and Khurana were removed from their positions as a result of the misconduct outlined in this complaint.

58.    On this news, Kyndryl's stock price fell $12.90 per share, or 55%, to close at $10.59 on February 9, 2026, damaging investors.

59.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and the other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

60.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Kyndryl common stock publicly traded on the NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers

and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

61.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

62.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

63.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

64.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;

17

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

65.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

66.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's securities met the requirements for listing, and were listed and actively traded on the NYSE, an efficient market;

- as a public issuer, the Company filed public reports;

- the Company communicated with public investors via established market communication mechanisms, including through the regular dissemination of press

releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

67.    Based on the foregoing, the market for the Company securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the common units, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

68.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

### <u>COUNT I</u>
### <u>For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder</u>
### <u>Against All Defendants</u>

69.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

70.    This Count asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

71.    During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

72.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

73.    Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

74.    Individual Defendants, who are or were senior executives and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Company's personnel to members of the investing public, including Plaintiff and the Class.

75.    As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

76.    Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

77.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

78.    By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

79.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

80.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's misstatement of revenue and profit and false financial statements.

81.     As officers of a public business, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

82.      Because of their positions of control and authority as senior executives and/or directors, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Company securities.

83.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)    declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)    awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c)    awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 11, 2026          **THE ROSEN LAW FIRM, P.A.**

/s/Phillip Kim
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

23